## McCloy v. West Norriton Township Municipal Authority

*Fox, Differ & Honeyman*, for plaintiffs.
*Brownback & Reynolds*, for defendant.

DANNEHOWER, P. J., May 2, 1958.—This is an action in equity by eight residential property owners challenging the constitutionality and validity of resolutions

adopted by defendant municipal authority providing for sewer rates and requiring plaintiffs to install in their four properties at their own expense, water meters designed to register water consumption upon which the sewer rates are based. . . .

## Discussion

The questions before the chancellor raise the issue of the constitutionality and validity of resolutions adopted by the municipal authority. In general, sewer rates are based upon meter readings of the West Norriton Water Company, a privately owned corporation, serving the township. Plaintiffs' homes are tied in with the township sewer system but they have their own artesian wells and therefore have no need for water meters. The township adopted a resolution requiring property owners who have their own water supply to install water meters at their own expense, in order to measure the water consumption upon which the sewer rates are based. Plaintiffs refused to comply with the requirements of this resolution and the township adopted a further resolution basing sewer rentals on an estimated water consumption of 270,000 cubic feet of water per quarter. Plaintiffs received a quarterly billing in the amount of $1,021. This latter resolution was subsequently amended and plaintiffs were assessed a rental equal to the charge to the highest residential user for the preceding quarter.

Plaintiffs contend that this method of assessment is unreasonable, not uniform and arbitrary, and further, the township is without authority to require them to install water meters at their own expense.

Defendant argues that the rates assessed plaintiffs are reasonable, and that it has the authority to require plaintiffs to install water meters at their own expense. Defendant further contends that plaintiffs have voluntarily placed themselves in their present classification

of user and furthermore, plaintiffs entered into an implied contract with the municipal authority when they connected with the township sewer system.

Defendant contends that its authority is derived from section 4 of the Municipality Authorities Act of May 2, 1945, P. L. 382, 53 PS §306, which provides in part:

"B. Every Authority is hereby granted, and shall have and may exercise all powers necessary or convenient for the carrying out of . . . (its) purposes, including . . . the following rights and powers . . .

"(h) To fix, alter, charge and collect rates and other charges in the area served by its facilities at reasonable and uniform rates to be determined exclusively by it, . . . Any person questioning the reasonableness . . . may bring suit against the Authority in the court of common pleas. . . . The court of common pleas shall have exclusive jurisdiction to determine all such questions involving rates or service. . . .

"(n) To do all acts and things necessary and convenient for the promotion of its business and the general welfare of the Authority, to carry out the powers granted to it by this Act or any other act."

As to the questions concerning the sewer rental rates, the first assessment based on an estimated consumption of 270,000 cubic feet of water amounting to over $4,000 per year was patently confiscatory. The present rate fixed on the charge to the highest residential user also appears to be arbitrary and unreasonable, because several of the highest residential users were doctors with offices in their homes, and the use of the water would be residential plus professional and commercial to some extent and it is not fair, reasonable or equitable to place these private home owners in a classification with the highest residential user who might be a doctor, or a family with 12 members and a big home with 20 water outlets. It seems that it

would be more equitable to assess plaintiffs a rate equal to the average rate charged to residential users, or as is done in other municipalities, on the number of outlets or occupants in the dwelling.

Defendant urges that plaintiffs have voluntarily placed themselves in their present classification by refusing to install the meters. This argument assumes the issue raised in this case. It cannot be said that plaintiffs have voluntarily placed themselves in their present classification unless it is determined that the rates are reasonable and that defendant has the authority to require plaintiffs to install meters at their own expense.

We fully agree that defendant has the statutory authority to fix sewer rental rates but only such rates that are reasonable and uniform. We are convinced that the rates plaintiffs have been assessed are unreasonable and are an unrealistic estimate of plaintiffs' use of the sewer system. It is clear, in view of the history of this case, that the township, by affixing exorbitant rates, is attempting to coerce plaintiffs into installing water meters.

For its authority requiring plaintiffs to install meters at their own expense, defendant relies heavily on the case of Vitacolonna v. City of Philadelphia, 2 D. & C. 2d 761 (1954), where the court upheld the right of the city to require the installation of water meters at the expense of the consumer. This case can be distinguished from the case before us. In the Vitacolonna case, the city was acting pursuant to express statutory authority. See Act of May 12, 1925, P. L. 612, sec. 1, 53 PS §4191. Also, in that case the meters were for the use and convenience of a water company, not a sewer authority. In our opinion, the provisions of the Municipality Authorities Act of 1945 do not grant to defendant the authority to compel plaintiffs to install meters at their own expense.

Defendant's theory of an implied contract, if valid, would require plaintiffs to abide by only such rules and regulations of defendant which are lawful. Since we have determined that the rates charged plaintiffs are unreasonable and the requirement to install water meters is without statutory authority, the contract theory fails. . . .

*Decree Nisi*

And now, May 2, 1958, in view of the foregoing, it is ordered, adjudged and decreed that:

1. Defendant be restrained by perpetual injunction from enforcing its resolutions of February 1, 1956, and January 2, 1957, pertaining to the assessment of sewer rentals against the several plaintiffs.

2. Plaintiffs severally are relieved of charges and liens for sewer rentals, pending the adoption of a new and reasonable rate.

3. The provisions of a resolution of May 11, 1953, adopted by defendant, requiring unmetered users to furnish and install water meters at their own expense, are void and unenforceable.

4. Defendant is ordered to pay the costs of this proceeding.

The prothonotary shall enter the foregoing decree and is directed to give counsel notice as required by the Rules of Civil Procedure Action in Equity, and unless exceptions are filed within 20 days after the notice of the filing of this adjudication, the decree entered nisi will become the final decree as of course.

*Opinion sur Exceptions*

DANNEHOWER, P. J., November 1, 1958.—Defendant, West Norriton Township Municipal Authority, has filed 12 exceptions to the chancellor's findings of fact, 10 exceptions to the chancellor's conclusions of law and an exception to the decree nisi.

These exceptions, after argument before the court en banc, are pending for decision.

It is not deemed necessary to separately pass upon each individual exception for practically all of them pertain to matters which were carefully weighed and considered by the chancellor and ruled on by him in his findings, and it is apparent that respondent seeks a reconsideration and readjudication of the entire proceedings in accord with its contentions.

Briefly, this proceeding involves a complaint in equity brought by four residential property owners in West Norriton Township, challenging the constitutionality and validity of certain resolutions adopted by defendant municipal authority providing for sewer rates and requiring plaintiffs to install on their properties at their own expense, water meters designed to register water consumption upon which the sewer rates are based.

In general, the exceptions raise two questions. Was there sufficient evidence to support the chancellor's findings of fact, and, are plaintiffs entitled to equitable relief?

After a careful review of the briefs, notes of testimony, and after argument, we are convinced that there was ample evidence to support the findings of the chancellor.

The legal questions involved as we see it, are: (1) Does the Municipality Authorities Act of May 2, 1945, P. L. 382, authorize defendant to require a property owner to install a water meter at his own expense to assess sewer rates? (2) Are the sewer rates charged plaintiffs reasonable and uniform?

We have read with great care defendant's brief and cases cited therein in support of the contention that the authority has the power to compel property owners to install water meters at their own expense. It appears to us that defendant is overlooking important factors which distinguish the present case from those relied on by defendant. Defendant cites as authority for its

position the case of Vitacolonna v. City of Philadelphia, 2 D. & C. 2d 761 (1954). In this case, the city was acting under express statutory authority in requiring property owners to install meters at their own expense. Another important distinction applicable to the Vitacolonna case, supra, and other cases cited by defendant is that in those cases, the meters were used to measure the amount of water consumed and not for the sole purpose of fixing a sewer rental rate as in the instant case. The dominant theme in cases defendant cites concerning the justification for requiring water meters is to prevent the useless consumption of a city's water supply.

In the case before us, we have an entirely different situation. These four property owners who had their own cesspools and water supply were compelled to tie into the municipal sewage system. They do not use water from the West Norriton Water Company which services the township, but still use their own water supply. The question of regulating and controlling the wasteful consumption of the city water supply is not involved in this case. The authority fixes its sewer rentals on the basis of water consumption. The only purposes served by these meters is to measure the consumption of water to enable defendant to assess the sewer rate.

We agree with the chancellor that in the absence of express statutory authorization defendant cannot require these property owners to install meters at their own expense and in our opinion the Municipality Authorities Act of 1945 does not grant such authority. We further agree with the chancellor that the rates plaintiffs have been assessed are unreasonable and not uniform and have an unrealistic relationship to the actual use by plaintiffs of defendant's sewage system. We affirm the chancellor's suggestion that a more equitable assessment would be an assessment equal to

268

the average rate charged residential users and not the highest rate, or in the alternative, an assessment based on number of outlets or occupants in the building.

*Order*

And now, November 1, 1958, defendant's exceptions are dismissed and the decree entered nisi on May 2, 1958, shall be entered as a final decree.